UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-01511-TLM |
| GREEN, JAMES D ) | |
| GREEN, ANGELA K ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JEREMY J. GUGINO, TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 08-06074-TLM |
| ) | |
| CANYON FINANCIAL OF BOISE, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

**INTRODUCTION**

In this adversary proceeding, plaintiff Jeremy Gugino, the chapter 7 Trustee, seeks to avoid a security interest asserted by defendant Canyon Financial of Boise, Inc. ("Canyon"). The Trustee contends the security interest was unperfected when the debtors, James and Angela Green, filed their chapter 7

MEMORANDUM OF DECISION - 1

bankruptcy petition, and thus avoidable under § 544(a)(1).[1]

Trial was held on January 28, 2009. The parties stipulated to the facts for the purposes of this matter, and the same are set forth below. They also stipulated to the admission of Exhibit 100. *See* Adv. Doc. No. 9; Attach. 1 thereto (Ex. 100). No witnesses were called, and no other documentary evidence offered.[2]

The matter was taken under advisement on the record the parties chose to present. This Decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.

**BACKGROUND AND FACTS**

On June 21, 2008, the Greens entered into a security agreement with Canyon to finance their purchase of a 2003 Yamaha V-Star motorcycle.[3] The Greens took delivery of the motorcycle on the same date.

A few days later, on June 25, 2008, Canyon applied for a certificate of title with the Idaho Transportation Department (ITD). *See* Ex. 100 at 4-5. The application lists the Greens as the owner, and Canyon as the lienholder. *Id.* at 4.

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] The Court sustained Canyon's objection to the Affidavit of Shirley Kasney. *See* Attach. 1 to Adv. Doc. No. 10.

[3] Though not explicitly stated in their stipulation, the parties do not dispute that Canyon actually provided a loan to the Greens for their use in purchasing the motorcycle from a private party and that the money was paid to the seller. The stipulation provides that there is an executed security agreement. Adv. Doc No. 9, at 2. This agreement was not provided to the Court.

MEMORANDUM OF DECISION - 2

Canyon listed the motorcycle's "actual" odometer reading at 9,372 miles. *Id.* But the odometer reading on the seller's endorsed Texas certificate of title, which Canyon submitted along with the title application, indicated that the motorcycle's odometer reading was 11,650 miles. *Id.* at 6.

Roughly three weeks later, on July 15, 2008, ITD sent Canyon a letter "explaining that it could not complete processing the title application for the Motorcycle until Canyon Financial explained a discrepancy in the Motorcycle's odometer reading." Adv. Doc. No. 9, at 2 (stipulated facts); *see also* Attach. No. 1 to Adv. Doc. No. 9, at 10 (letter). To resolve the discrepancy, ITD asked Canyon to provide an indemnifying affidavit from the previous owner of the motorcycle. *See* Attach. 1 to Adv. Doc. No. 9, at 10.

Canyon did not provide the requested affidavit. Consequently, when the Greens filed their bankruptcy petition on July 25, 2008,[4] ITD had not issued a certificate of title showing Canyon's lien. *See* Adv. Doc. No. 9, at 2 ¶¶ 8, 9.

**DISCUSSION AND DISPOSITION**

The Trustee contends that Canyon's security interest in the motorcycle is unperfected because no title has issued showing Canyon's lien. In its brief, Canyon disputes this contention on two primary grounds. First, Canyon argues

---

[4] The stipulated facts erroneously lists a petition date of September 16, 2008, but the Court takes judicial notice of the July 25, 2008 filing date. *See* Case No. 08-01511-TLM; Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 3

that its lien is perfected because, notwithstanding ITD's refusal to issue a title, Canyon fully complied with Idaho's certificate-of-title statutes. Adv. Doc. No. 11, at 4-5. Second, Canyon argues that it perfected its lien by filing a "transitional ownership document" with ITD. *Id.* at 3-4.

In addition, at the trial of this matter, Canyon advanced a third, alternative argument: Canyon contends that if this Court rejects its two lead arguments, then the Court must also conclude that the Greens have no ownership interest in the motorcycle. In other words, Canyon is arguing that if *its* security interest is unperfected due to the fact that a title has not issued, then the Greens similarly cannot claim an ownership interest in the vehicle.

For the reasons discussed below, the Court holds that none of these arguments is persuasive. The Greens have an ownership interest in the motorcycle, and Canyon did not properly perfect its lien prior to the Greens' bankruptcy.

### A.     The Trustee's strong-arm powers under § 544

Section 544(a) grants the Trustee the powers of a hypothetical lien creditor as of the date the Greens filed their bankruptcy petition. *See* § 544(a)(1).[5] As a

---

[5] Section 544(a)(1) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any
>
> (continued...)

MEMORANDUM OF DECISION - 4

result, if the Greens have an ownership interest in the motorcycle, and if Canyon's security interest is not adequately perfected, the Trustee may avoid that security interest and retain it for the benefit of the estate. *See* §§ 544(a), 551.

State law governs the Trustee's rights as a hypothetical lien creditor. *See Hopkins v. Brasseaux (In re Saunders)*, 08.1 I.B.C.R. 16, 17, 2008 WL 538443, at *2 (Bankr. D. Idaho 2008). Consequently, the Trustee can use his avoiding powers to defeat Canyon's security interest in the motorcycle if, according to Idaho law, that security interest was unperfected on July 25, 2008, when the Greens filed their bankruptcy petition. *Id.*

### B. Ownership (the Greens' interest)

Canyon argues that the Greens are not the owners of the motorcycle at issue because there is no certificate of title naming them as such.[6] Presumably, Canyon

---

[5] (...continued)
obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

[6] Although Canyon raises this argument only as an alternative to its two lead arguments, *see supra*, at 3-4, the Court addresses it first because it presents a threshold issue in this action. The Court would note, however, that this argument is inconsistent with the parties' stipulation that Canyon has a "valid security interest . . . which attached to the motorcycle." Adv. Doc. No. 9 at 2. With this stipulation, the parties necessarily agreed that the Greens have an interest in the motorcycle. *See* Idaho Code § 28-9-203(2) (security interest attaches only if, among other things, the "debtor has rights in the collateral").

MEMORANDUM OF DECISION - 5

relies on Idaho Code § 49-503, which provides:

> Except as provided in sections 49-502, 49-510 through 49-512, and 49-514, Idaho Code, no person acquiring a vehicle from the owner . . . shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle, . . . .

Idaho Code § 49-503; *see also, e.g., In re Woods*, 386 B.R. 758, 762, 08.2 I.B.C.R. 61, 62 (Bankr. D. Idaho 2008) ("A party has 'no cognizable ownership interest in a vehicle where no certificate of title [has] yet been issued in that party's name.'") (citing *Hopkins v. Shradley, (In re Shradley)*, 03.1 I.B.C.R. 7, 8 (Bankr. D. Idaho 2003)). Under Canyon's view of these authorities, the motorcycle apparently still belongs to the individual listed on the Texas title.

### 1. Canyon's argument that the Greens have no ownership interest in the vehicle is at odds with this Court's prior holdings

Canyon's ownership argument is inconsistent with this Court's decision in *Rakozy v. Hunter (In re Hunter)*, 88 I.B.C.R. 46, 47-48 (Bankr. D. Idaho 1988). *Hunter* held that a debtor who was not listed on the title nonetheless qualified as the owner of the vehicle at issue. *Id.*

In *Hunter*, the person listed as the owner on the title had sold the vehicle and, as is the case here, did not assert any claim to the vehicle. Rather, he signed the title over to a dealer. *Id.* at 45. Subsequently, the debtor and his mother (the alleged purchasers) signed a new title application, but they failed to submit it to the

MEMORANDUM OF DECISION - 6

Idaho Department of Motor Vehicles. *Id.* at 46. When the debtor filed bankruptcy, his mother claimed ownership of the vehicle. *Id.* The trustee, on the other hand, alleged that the debtor owned the vehicle, and that there was a debtor-creditor relationship between the debtor and his mother. *Id.* at 46-47. The court agreed with the trustee. *Id.* After acknowledging that Idaho Code § 49-404 (since recodified as § 49-503), controlled the "issue of title to a motor vehicle," the court held that the debtor nonetheless had a "better claim to ownership" than his mother:

> Neither the debtor or Mrs. Jarosch were ever issued a certificate of title. Therefore neither have a perfected title to the car. As between the debtor and his mother, the indicia of ownership suggests the son has a better claim to ownership. There was a debtor-creditor relationship between debtor and Mrs. Jarosch. Mrs. Jarosch did not apply for the title as owner, nor did she perfect her interest upon transfer of the vehicle to debtor. Evidence indicates she intended to convey title to her son. The vehicle is not the property of Mrs. Jarosch.

*Id.* at 47; *see also id.* at 48 ("The debtor has a better claim to title even without the actual title because of the indicia of ownership found in his schedules and his signature on the back of the title certificate.")

The court further held that the debtor's mother had failed to perfect her security interest in the car. *Id.* at 48. Consequently, under § 544, "the trustee as judicial lienholder, may void any unperfected security interest of Mrs. Jarosch in the vehicle."[7] *Id.*

---

[7] *Hunter* therefore also supports avoidance of Canyon's lien in the present case, as
(continued...)

MEMORANDUM OF DECISION - 7

The Greens' ownership is also consistent with this Court's holding in *In re Wyatt*, 173 B.R. 698, 703, 94 I.B.C.R. 186 (Bankr. D. Idaho 1994). *Wyatt* held that Idaho Code § 49-503 "simply cannot be interpreted to defeat the interest of a purchaser who has paid all, or a portion, of the purchase price of the vehicle to the seller." *Id; accord Johnson v. Bennion*, 211 P.2d 148, 150 (Idaho 1949) (plaintiff had sufficient "right of possession" to sue for conversion of vehicles, despite fact that plaintiff was not the title owner of the vehicles).

Under *Hunter* and *Wyatt*, despite the fact that there is no title naming them as owners, the Greens have an ownership interest in the motorcycle sufficient for § 544(a) purposes in the present case.[8]

---

[7] (...continued)
discussed *infra*.

[8] Alternatively, Canyon's argument that the Greens do not have any interest in the motorcycle is likely foreclosed by Idaho Code § 49-502, which is an express exception to Idaho Code § 49-503. *See* Idaho Code §§ 49-502; 49-503. As this Court explained in *Fitzgerald v. Blackman (In re Blackman)*, 92 I.B.C.R. 209 (Bankr. D. Idaho 1992), § 49-502 allows purchasers to obtain an ownership interest in a vehicle before IDT issues a certificate of title:

> These provisions allow dealers and others to convey title to the vehicle purchaser even though it may be some time before a new certificate of title is reissued in the name of the purchaser. Without such exceptions to the general rule, the sale and purchase of vehicles would be an extremely cumbersome process, during which the purchaser would suffer a sort of "no man's land" having paid the purchaser price but having no defensible ownership rights in the vehicle.

92 I.B.C.R. at 211. *Accord Fitzgerald v. First Security Bank (In re Walker)*, 93 I.B.C.R. 273, 161 B.R. 484, 931 I.B.C.R. 273 (Bankr. D. Idaho 1993), *aff'd* 178 B.R. 497 (D. Idaho 1994), *aff'd* 77 F.3d 322 (9th Cir. 1996). Although *Walker* and *Blackman* are preference cases, their reasoning applies here.

MEMORANDUM OF DECISION - 8

### 2. *In re Woods* **and its predecessors are distinguishable**

This result is not inconsistent with this Court's recent holding in *Woods* and similar cases.

In *Woods*, the debtors sold a vehicle to their daughter and son-in-law before filing their bankruptcy petition, but neglected to change the name on the title. 386 B.R. at 760, 760 n.1. Relying on the fact that the vehicle was still titled in the debtors' names, the trustee sought turnover of the vehicle under § 542. The court granted the motion, explaining that under Idaho's certificate-of-title laws, "[a] party has 'no cognizable ownership interest in a vehicle where no certificate of title [has] yet been issued in that party's name.'" *Id.* at 762 (citations omitted).

The *Woods* fact pattern has arisen several times before this Court. That is, debtors often argue that they are not the true owners of a vehicle because they have transferred it to someone else — often a family member. *See, e.g., Saunders*, 2008 WL 538443, at *1-2 (debtor or her mother listed as title owners; debtor's mother claimed to be the actual owner); *Shradley*, 03.1 I.B.C.R. at 9 (debtor listed as title owner; debtor's brother claimed to be the actual owner). And in each of these cases, this Court has held that the *title* owner (and not the alleged transferee) owned the vehicle. *See Woods*, 386 B.R. at 762-73; *Saunders*, 2008 WL 538443, at *3-4; *Shradley*, 03.1 I.B.C.R. at 9. Such a result is appropriate in these situations because a debtor's judgment lien creditors are entitled to rely on the title

MEMORANDUM OF DECISION - 9

records to determine if the debtor owns a vehicle. As explained in *Saunders*:

"[O]n bankruptcy day, [debtor] Haylee Saunders' judgment lien creditor would be justified in assuming she held an ownership interest in the [Toyota] Tacoma by virtue of her name being listed on the certificate of title." 2008 WL 538443, at *3.

This is not a case where parties are arguing ownership inconsistent with an issued certificate of title. In the case, there is no Idaho certificate of title, and nobody asserts that the person listed on the Texas title owns the motorcycle. In other words, there is no third party creditor who has relied on the title records – in particular the Idaho title records – to its detriment. As such, the holdings in *Woods* and similar cases are inapplicable.[9]

### C.   Perfection (Canyon's interest)

Under Idaho law, security interests in vehicles may be perfected only by complying with the state's certificate-of-title laws. *See* Idaho Code §§ 28-9-311(a)(2); 49-510; 49-512. As stated in Idaho Code § 49-510(1):

> No lien or encumbrance on any vehicle registered under the laws of this state . . . shall be perfected as against creditors or subsequent purchasers or encumbrancers without notice until the holder of the lien or encumbrance . . . has complied with . . . section 49-504 . . . .

---

[9] In reciting the legal standards governing ownership of a vehicle, *Woods* generally stated that, under Idaho law, a party "has 'no cognizable ownership interest in a vehicle where no certificate of title [has] yet been issued in that party's name.'" *Woods*, 386 B.R. at 762 (citing *Shradley*, 03.1 I.B.C.R. at 8). This recitation is generally accurate and appropriate given the facts of that case, but is too narrow when applied to the different fact pattern presented here and in the Court's earlier decisions in *Hunter*, 88 I.B.C.R. at 47-48 and *Wyatt*, 173 B.R. at 703.

MEMORANDUM OF DECISION - 10

Section 49-504 in turn, requires persons applying for a certificate of title to complete an application that "shall" contain, among other things, "a full description of the vehicle including the make, identification numbers, *and the odometer* reading at the time of the sale or transfer, . . . *and any other information as the department may require*." Idaho Code § 49-504(1) (emphasis added).

### 1. Canyon did not comply with Idaho's certificate-of-title laws

Canyon contends that it fully complied with Idaho Code § 49-504, but that ITD nonetheless erroneously refused to issue a certificate of title.[10] *See* Adv. Doc. No. 11, at 4-5. Canyon did not, however, fully comply with the relevant statutes. ITD is statutorily mandated to issue a certificate of title only after (1) the applicant has filed the "properly completed title application and all required supporting documents" and (2) ITD is "satisfied as to the genuineness and regularity of the documents submitted." Idaho Code § 49-510(1), (3). *Cf. also Fitzgerald v. Am. Gen. Fin. Inc. (In re Psalto)*, 225 B.R. 753, 755, 98 I.B.C.R. 108, 109 (Bankr. D. Idaho 1998) ("Idaho Code § 49-510 places the burden of securing the issuance of a certificate squarely on the lien creditor").

As noted above, the Idaho Code requires applicants to provide ITD with

---

[10] Canyon does not contend that it substantially complied with Idaho's certificate-of-title statutes. Although Canyon's trial brief made a passing assertion that the title records as shown on the petition date "put the Trustee on notice as a matter of law," that assertion was not tethered to a substantial-compliance argument and was not supported by any pertinent authorities. *See* Adv. Doc. No. 11, at 6. Consequently, this Court does not address any substantial-compliance theory.

MEMORANDUM OF DECISION - 11

information about the vehicle (including an odometer reading), as well as "any other information as the department may require." Idaho Code § 49-504(1). Thus, according to the plain language of this statute (and in particular, the phrase "any other information the department may require"), ITD could request additional information about the odometer discrepancy. Similarly, ITD could withhold a certificate of title until it received that information. Idaho Code § 49-510(1), (3).

Further, although Canyon argues that it was impossible to comply with ITD's request for an explanation as to the odometer discrepancy, it does not explain why that is so. Canyon could have attempted to contact the previous owner (his address is listed on the Texas title) to discover the reasons for the discrepancy. Failing that, or if the Texas owner could not provide a logical explanation, Canyon could have communicated directly with ITD in an effort to resolve the issue.[11] Instead, Canyon did nothing. In the face of such inaction, Canyon's insistence that it fully complied with the statute lacks persuasiveness.

### 2. Canyon did not perfect its lien by filing a transitional ownership document

Canyon alternatively contends that it perfected its lien by filing a "transitional ownership document" with ITD. *See* Idaho Code § 49-121(7) (defining transitional ownership document); Idaho Code § 49-527 (explaining the

---

[11] Canyon's trial brief suggests **ITD** had the burden to resolve the discrepancy by either requesting a bond or invoking "other remedies." Adv. Doc. No. 11, at 4. No authority is cited for this proposition.

MEMORANDUM OF DECISION - 12

purpose for such documents). More specifically, Canyon contends the documents submitted to the Court as Exhibit 100, taken as a whole, show it filed a transitional ownership document. *See* Adv. Doc. No. 9, Attach. 1 thereto.

But transitional ownership documents are filed only when "primary ownership documents" are unavailable. *See* Idaho Code §§ 49-121(7); 49-527; 49-528. Primary ownership documents include existing certificates of title (in the case of used vehicles) or manufacturer's statements of origin (in the case of new vehicles). *See* Idaho Code § 49-504(1), (3). Ordinarily, these documents are submitted with the title application. *See* Idaho Code § 49-504(1), (2). If they are not available, lienholders can provisionally perfect their liens by filing a transitional ownership document with an otherwise complete title application. *See* Idaho Code § 49-527; § 49-530(4). Then, so long as the lienholder files the primary ownership document within 90 days from the date of the underlying security agreement, the lien is perfected as of the original filing date. *See* Idaho Code § 49-527(2), (4); § 49-529(5).

None of these provisions is relevant here. The primary ownership document for the motorcycle (the Texas certificate of title) was available to Canyon and submitted to ITD along with Canyon's application for an Idaho title.[12]

---

[12] Presumably, if Canyon had intended to perfect its security interest with a transitional ownership document, it would have submitted the appropriate ITD form. *See* IDT Form 3901, *Transitional Ownership Document (TOD)*, http://itd.idaho.gov/DMV/vehicleservices/
(continued...)

MEMORANDUM OF DECISION - 13

*See* Ex. 100, at 6.  Thus, Canyon did not perfect its lien under the alternative, transitional-ownership-document method provided in the Idaho Code.  *See generally* Idaho Code § 49-527(3) ("The transitional ownership document is not intended to supersede the requirements of section 49-504, . . . but rather to provide an alternative method of lien perfection.").

**CONCLUSION**

The Court finds and concludes that Canyon did not perfect its security interest in the motorcycle prior to July 25, 2008.  The Trustee's interest in the motorcycle as a hypothetical judicial lien creditor is therefore superior to Canyon's, and he is entitled to judgment on his § 544(a)(1) claim.[13]  The Trustee shall submit a proposed judgment on his § 544(a)(1) avoidance complaint.

DATED:   March 20, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[12] (...continued)
documents/3901.pdf (last visited Mar. 19, 2009).  Exhibit 100 contains no such document.  Nor do the stipulated facts indicate Canyon submitted any such document to ITD.

[13] The Trustee also asserted a § 549(a) claim, but only "[t]o the extent Defendant [Canyon] perfects its security interest in the Motorcycle at some point during the pendency of this adversary proceeding, . . . ."  Adv. Doc. No. 1, at 3.  According to the facts before the Court, Canyon has not taken any action to perfect its security interest in the motorcycle during the pendency of this proceeding.  *See* Adv. Doc. No. 9, at 9.  (The parties stipulated that "[a]s of the date of this pleading, Canyon Financial has not been issued an Idaho Certificate of Title for the Motorcycle showing them as a lienholder on the Motorcycle.").  As a result, the Court does not address the § 549(a) claim.

MEMORANDUM OF DECISION - 14